COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Frank and Clements


SHIRLEY M. THOMAS
                                        MEMORANDUM OPINION*
v.    Record No. 1293-00-4                  PER CURIAM
                                        NOVEMBER 7, 2000
PRINCE WILLIAM COUNTY SCHOOL BOARD


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Herbert S. Rosenblum, on brief), for
            appellant.

            (Thomas C. Palmer, Jr.; Brault, Palmer,
            Grove, Zimmerman, White & Steinhilber, LLP,
            on brief), for appellee.


     Shirley M. Thomas (claimant) contends that the Workers'

Compensation Commission erred in finding that (1) she failed to

prove that back surgery proposed by Dr. Ian Gordon was causally

related to her compensable October 4, 1995 injury by accident;

and (2) her application alleging a change-in-condition was

barred by the applicable statute of limitations contained in

Code § 65.2-708.  Upon reviewing the record and the briefs of

the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the commission's decision.  See

Rule 5A:27.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I. Surgery (Causation)

On appeal, we view the evidence in the light most favorable to the prevailing party below. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). Unless we can say as a matter of law that claimant's evidence sustained her burden of proving that the proposed back surgery was causally related to her October 4, 1995 injury by accident, the commission's findings are binding and conclusive upon us. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

In ruling that claimant failed to prove that Dr. Gordon's proposed L3-4 surgical treatment was causally related to her October 4, 1995 compensable injury by accident, the commission found as follows:

> The proposed surgery is to correct degenerative disc disease at L3-4. The overwhelming weight of the evidence shows the disc degeneration was neither caused, accelerated, nor aggravated by the industrial accident. The records of the four doctors[, Drs. Victor N. Guerrero, Herbert E. Lane, Jr., Anthony Debs, and John A. Bruno, Jr.,] who did extensive orthopedic and neurological work-ups of the injury failed to find any disc disease at L3-4. Even Dr. Gordon could not state to a reasonable medical probability that the disc degeneration pre-existed the claimant's injury.
>
> Dr. Gordon, who did not see the claimant until almost three years after the accident, can only state that the "patient has evidence of degeneration of the 3-4 disc

- 2 -

some of which may have pre-existed her injury." Dr. Bruno, on the other hand, clearly states in his February 23, 1999, report that there is "no evidence that the trauma of 10/4/95 produced whatever the disease process is at the 3-4 disk."

Given the claimant's extensive treatment and evaluation by four orthopaedic surgeons, a neurosurgeon, and other medical specialists with multiple diagnostic work-ups, we find it significant that no specialist diagnosed or even suggested disc degeneration and disease at the L3-4 level before Dr. Gordon. Although Dr. Gordon argues in his letter of March 15, 1999 to claimant's counsel that "[i]t is clear by history and by discography that this patient's mild degeneration has been severally [sic] aggravated by her injury and represents a work injury," he cannot state to a reasonable medical probability that the disc degeneration pre-existed her injury.

. . . [T]he first discogram, performed on July 15, 1998 was characterized as an "unremarkable exam" with "no evidence of extravasation." The radiologist noted in his operative report that injection at the L3-4 level reproduced pain in the mid back, which the patient alleged was "similar in character and location to her present pain problem." However, when the claimant was initially seen by Dr. Gordon in June 1998, Dr. Gordon found that most of the claimant's problems were related to the low back and particularly noted severe pain and tenderness over the L5-S1 level as well as tenderness over her coccyx.

Based upon Dr. Bruno's February 23, 1999 opinions and the lack of any persuasive medical evidence of disc disease at the L3-4 level before October 4, 1995 and before Dr. Gordon began treating claimant, the commission could conclude that claimant

failed to prove that the October 4, 1995 accident either caused, aggravated, or accelerated the L3-4 disc degeneration, for which Dr. Gordon proposed performing surgery.  We note that an MRI of claimant's lumbar spine, performed on July 19, 1996, nine months after her industrial accident, was "essentially normal," with "no evidence of disc herniation, significant degenerative change or herniated nucleus pulposus."  As fact finder, the commission was entitled to weigh the medical evidence, to accept Dr. Bruno's opinions, and to give little probative weight to Dr. Gordon's opinions.  "Questions raised by conflicting medical opinions must be decided by the commission."  Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989).

Based upon this record, we cannot find as a matter of law that claimant's evidence sustained her burden of proof.

## II.   Statute of Limitations

Code § 65.2-708(A) provides in its pertinent part that "[n]o . . . review [of any award on the ground of change-in-condition] shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title . . . ."

It was undisputed that December 15, 1995 was the last day for which compensation was paid to claimant pursuant to an award.  If any payments were made after that date, there is no evidence in the record to establish that they were paid pursuant

- 4 -

to an award.[1]  Claimant did not file her application alleging a change-in-condition until March 18, 1999, more than twenty-four months after December 15, 1995, the last day for which compensation was paid pursuant to an award.  Accordingly, the commission did not err in finding that claimant's application was untimely.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>

---

[1] Although the record contains an Agreed Statement of Fact and Supplemental Memorandum of Agreement apparently sent to claimant in August 1997 by the employer's loss control specialist, those documents were never executed by claimant and no award was ever entered by the commission with respect to those documents.